UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CARMEN I. BONILLA,

                            Plaintiff,                06-CV-6542

              v.                                      **DECISION**
                                                     **and ORDER**
MONROE BOCES #1,

                            Defendant.
_____

## INTRODUCTION

Plaintiff Carmen I. Bonilla ("Plaintiff" and/or "Bonilla"), proceeding *pro se*, brings this action pursuant to the Americans with Disabilities Act of 1990, (codified at 42 U.S.C. §12112 et. seq.) ("ADA") alleging that defendant Monroe #1 BOCES, incorrectly named as Monroe BOCES #1 (hereinafter "Defendant" or "BOCES"), discriminated against her, forced her to resign her employment and retaliated against her because of her alleged disability, namely, depression and bi-polar disorder.

Defendant moves for summary judgment, arguing that Plaintiff's claims fail as a matter of law because she cannot establish a *prima facie* case of disability discrimination. BOCES contends that Bonilla is not "disabled" within the meaning of the ADA, and even if she were, she cannot demonstrate that she was subjected to adverse employment action because of her disability. Moreover, Defendant submits that Plaintiff cannot establish that her termination (or

forced resignation) was merely a pretext for discrimination based upon her disability. Plaintiff has not opposed Defendant's motion[1].

For the reasons set forth below, Defendant's Motion for Summary Judgment is granted and Plaintiff's Complaint is dismissed with prejudice.

## BACKGROUND

Local Rule of Civil Procedure 56.1 requires that a party moving for summary judgment include with its motion a "separate, short, and concise statement of the material facts to which the moving party contends there is no genuine issue to be tried." <u>See</u> Local Rule 56.1(a). "When a party has moved for summary judgment [] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." <u>Glazer v. Formica Corp.</u>, 964 F.2d 149, 154 (2d Cir. 1992). In light of Plaintiff's failure to properly controvert Defendant's Statement of Material Facts ("SOMF"), this Court will deem those factual assertions

---

[1] On February 4, 2008, BOCES filed its Motion for Summary Judgment. The Certificate of Service indicated that a copy of the following documents were served on Plaintiff by United States Mail at Plaintiff's address as listed on the Court's Docket: Defendant's Notice of Motion for Summary Judgment, Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment, Memorandum of Law in Support of Defendant's Motion for Summary Judgment and Defendant's Statement of Material Facts. On March 8, 2010, the Court electronically notified BOCES that the return date for its summary judgment motion was May 5, 2010. On the same day, March 8, 2010, the Court sent a copy of the same notice to Plaintiff at the address listed on the Court's Docket via first class mail. The Court did not receive any returned mail from the post office regarding the March 8, 2010 correspondence to Plaintiff. To date, Plaintiff has not opposed Defendant's Motion for Summary Judgment.

admitted to the extent they are supported by the record evidence. See Local Rule 56.1(c) (statements of undisputed fact that are not controverted by the non-moving party are deemed admitted); Cassidy v. Nicolo, 2005 WL 3334523, *2 (W.D.N.Y. 2005) (facts asserted by the defendants deemed admitted where the plaintiff failed to file a response). Accordingly, the undisputed facts are as follows:

### A. Parties

BOCES is a "Board of Cooperative Educational Services" which provides services and education to individuals in the BOCES Community. It is an extension of its component school districts. Plaintiff was employed by BOCES from June 2000 through January 2005 as a substitute bus attendant. In that position, Plaintiff accompanied bus drivers on bus runs and assisted students with boarding, riding and exiting the bus. In between bus runs, Plaintiff would wait in a coffee/lunch room (the "break room") with other bus attendants. Although Bonilla performed her duties as a bus attendant well, she was involved in a number of incidents in the break room with other bus attendants, which ultimately led to her dismissal in January 2005.

### B. Plaintiff's Conflict with Co-workers

Plaintiff testified in her deposition that in or around June 2004 she began to have conflicts and problems with a few of her co-workers. Specifically, Plaintiff claimed three female co-workers routinely called her names, gossiped about her, and generally

harassed her on a daily basis. (Defendant's Statement of Material Facts ("SOMF"), Ex. 7, pp. 36-42). The alleged offenders purportedly called her "crazy" and "menopausal" and made comments indicating that she was a jealous woman and had engaged in prostitution. (Defendant's SOMF, Ex. 1; Ex. 7, pp. 58-59). Plaintiff claims the problems with her co-workers aggravated her already existing disability - depression and bi-polar disorder - and made her increasingly more nervous, anxious, and aggressive. (Defendant's SOMF, Ex. 7, pp. 32-35). Plaintiff also claims that her immediate supervisor and the female co-workers allegedly harassing her knew of her mental health issues and "nervousness," and were purposely trying to provoke and aggravate her. (Id., pp. 36-38).

In and around November 2004 through December 2004 both Bonilla and several of her female co-workers filed written complaints with their immediate supervisor, Nicholas Gonzalez ("Gonzalez"), regarding problems the co-workers were having with each other. Gonzalez considered the complaints by the women to be "high school nonsense," but attempted to resolve the apparent conflict among them nonetheless. (Defendant's SOMF, Ex. 3. ¶10). Gonzalez met with the employees and offered to assign Bonilla to a permanent bus run so that she would not have to spend as much time interacting with her co-workers in the break room. (Id., ¶11). Bonilla turned down this opportunity. (Id.). When Gonzalez concluded that he would not be able to resolve the conflict among the co-workers on his own accord,

he referred the matter to the Executive Director of Human Resources, Sheila Wallenhorst ("HR"). Gonzalez provided HR with copies of all of the written complaints filed by Bonilla[2] and her co-workers.

## C. Discharge of Plaintiff from BOCES

HR reviewed the written complaints filed by Bonilla and her co-workers regarding their conflicts and scheduled a meeting with all involved employees to discuss the issues among them. (Defendant's SOMF, Ex. 2, ¶¶ 6, 7). HR attempted to conduct that meeting in December 2004 before the holidays, but Bonilla was unable to attend due to medical absence. It is unclear from the record whether this medical absence was due to Bonilla's depression and bi-polar disorder or from some other unrelated condition. The meeting was rescheduled for January 10, 2005.

Just prior to the meeting with HR, Bonilla and two of the alleged offenders were involved in an altercation on January 6, 2005. Bonilla claims that two of the women with whom she was having difficulty approached her in the ladies' room, made negative comments to her and then pushed her. (Defendant's SOMF, Ex. 7, pp. 57-60). Bonilla left the bathroom, and the women followed her, making further comments to her. (Id.). Upon returning to the break room, allegedly

---

[2] Plaintiff apparently cannot speak or write English. Her complaints to Gonzalez were written in Spanish and had to be translated for HR. Notations on those translated complaints indicate that they were not translated until after HR made the determination to terminate Bonilla's employment with BOCES. Defendant's request to meet with Bonilla in January 2005 was written in Spanish but a translator was not provided at the meeting. Similarly, Defendant made arrangements to have a translator present at Plaintiff's deposition, but then submitted all notices regarding the instant motion to her in English.

in defense of herself, Bonilla pushed the two women. (Id.). The altercation in the break room was witnessed by other co-workers, but apparently the altercation in the bathroom was not. (Defendant's SOMF, Ex. 7, p. 61). Plaintiff was immediately sent home for the day, and then was unable to return to work for approximately three weeks due to her mental health issues. (Id., pp. 62-3).

HR attempted to contact Bonilla by telephone and in writing following the January 6, 2005 incident to discuss the matter. On January 18, 2005, Bonilla and her husband and her daughter (who attended in order to translate for her mother) attended a meeting with HR. (Defendant's SOMF, Ex. 2, ¶15). During the meeting, Plaintiff admitted to pushing the two women, but did not tell HR that the incident was first instigated by them in the ladies' room. (Id.). In accordance with BOCES' "zero tolerance" policy and prohibition against physical assault on employees, Bonilla was asked to resign (in exchange for BOCES not contesting her entitlement to unemployment benefits). She was told that if she did not resign, her employment would be terminated. (Id., ¶17). Plaintiff elected to resign and signed a resignation letter dated January 18, 2005. (Defendant's SOMF, Ex. 21).

Plaintiff testified that Gonzalez and her Spanish speaking co-workers knew of her problems with depression and bi-polar disorder (Defendant's SOMF, Ex. 7, pp. 36-38), and knowing of her "nervous condition," the alleged offenders engaged in a campaign to provoke,

6

ridicule and annoy Plaintiff to aggravate her condition. (Defendant's SOMF, Ex. 7, pp. 50-53). Moreover, BOCES allegedly discriminated against Bonilla based on Gonzalez's failure to address the problem and concerns that Bonilla brought to him. (Defendant's SOMF, Ex. 7, pp. 67-69). Plaintiff testified that she believed Gonzalez did not do anything to help her with the co-worker harassment because two of the alleged offenders were his family members. (Defendant's SOMF, Ex. 7, pp. 42-43). Other than these statements, Bonilla could not articulate the basis for her claims of discrimination, harassment and retaliation based upon her disability.

## DISCUSSION

## I.    Standard of Review on a Motion for Summary Judgment

Rule 56(c)(2) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." In reaching this determination, "'the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party . . .'" Catalano v. State Farm Ins. Cas. Co., 2007 WL 295321, *3-4 (W.D.N.Y. 2007)(quoting Thomas v. Irvin, 981 F.Supp. 794, 799 (W.D.N.Y. 1997)). A fact is "material" only if it has some effect on the outcome of the suit. Id. at *4 (citing Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986)). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment to produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "A party seeking to defeat a motion for summary judgment must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show, . . ., that there are specific factual issues that can only be resolved at trial." Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995). "[P]roceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment." See Viscusi v. Proctor & Gamble, 2007 WL 2071546, at * 9 (E.D.N.Y.2007).

Summary judgment dismissing an employment discrimination case is warranted only where a plaintiff cannot provide evidence to support an essential element of her claim. See Schnabel v. Abramson, 232 F.3d 83 (2d Cir. 2000); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 764 (2d Cir. 1998). As the Second Circuit has recognized, employment discrimination

> is often accomplished by discreet manipulations and hidden
> under a veil of self-declared innocence. An employer who
> discriminates is unlikely to leave a "smoking gun," such as
> a notation in an employee's personnel file, attesting to a

discriminatory intent. A victim of discrimination is
therefore seldom able to prove his or her claim by direct
evidence and is usually constrained to rely on the
cumulative weight of circumstantial evidence.

See Rosen v. Thornburgh, 928 F.2d 528, 533 (2d Cir. 1991) (internal

quotations omitted). Nonetheless, "the salutary purposes of summary

judgment - avoiding protracted, expensive and harassing trials -

apply no less to discrimination cases than to commercial or other

areas of litigation." See Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.

1985).

## II. **Plaintiff has failed to state a claim under the Americans with Disabilities Act.**

Plaintiff alleges that she was forced to resign as a result of

a disability in violation of the ADA. The ADA prohibits

discrimination against qualified individuals with a disability with

respect to conditions of employment including hiring, advancement,

discharge and compensation. See 42 U.S.C. §12112 (1995). Disability

discrimination claims brought pursuant to the ADA are governed by the

same legal standards as claims made pursuant to Title VII, and thus

are evaluated using the McDonnell Douglas burden-shifting test. See

Parker v. Columbia Pictures Indus., 204 F.3d 326, 332 n.1 (2d Cir.

2000) (ADA claims are evaluated under McDonnell Douglas); Kloupte v.

MISYS Int'l Banking Sys., 2007 U.S. App. LEXIS 24699, *2 (2d Cir.

2007) ("Claims of employment discrimination under the ADA are

governed by the three-step burden-shifting framework set forth in

McDonnell Douglas.")

Under that framework, the plaintiff bears the burden of first proving a *prima facie* case of discrimination. If plaintiff succeeds in stating a *prima facie* case, the burden of production shifts to defendant to state a legitimate, non-discriminatory reason for taking the employment action at issue. Should the employer meet that burden, the burden of production then shifts back to plaintiff to show that the reasons proffered by the employer were not the true reasons for the adverse employment action, but instead were a pretext for discrimination, and that discrimination was the real reason. See Id..

The first step in this case, therefore, is to determine whether Plaintiff has stated a *prima facie* case of disability discrimination. In order to make out a prima facie case of discriminatory discharge under the ADA, a plaintiff must show that (1) her employer is subject to the ADA[3]; (2) she suffers from a disability within the meaning of the ADA; (3) she could perform the essential functions of her job with or without reasonable accommodation; and (4) she was fired because of her disability. Reeves v. Johnson Controls World Servs., 140 F.3d 144, 149-150 (2d Cir. 1998) (citing Ryan v. Grae & Rybicki, P.C., 135 F.3d 867 (2d Cir. 1998)(citations omitted); Lester v. M&M Knopf Auto Parts, 2006 U.S. Dist. LEXIS 70371 (W.D.N.Y. 2006). In order to satisfy the fourth element, plaintiff "must point to facts

---

[3] There is no dispute that BOCES is subject to the provisions of the ADA since it employs more than 15 people. See 29 C.F.R. § 1630.2(e)(1) (2005).

that suggest the termination was motivated, at least in part, by animus based on [her] alleged disability." Lama v. Consolidated Edison Co., 1999 U.S. Dist. LEXIS 16966, *7 (E.D.N.Y. 1999) aff'd 242 F.3d 366 (2d Cir. 2000).  Thus, the fourth element requires the plaintiff establish that the employer had knowledge of the disability sufficient to discharge the plaintiff because of it.  See Moore v. Time Warner GRC 9, 18 F.Supp.2d 257, 262 (W.D.N.Y. 1998) (Larimer, J.) (citing Kolivas v. Credit Agricole, 1996 WL 684167, *5 (S.D.N.Y. 1996) (where the court found that knowledge of the plaintiff's depression was not sufficient to demonstrate that the employer knew he was "disabled" within the meaning of the ADA), aff'd, 125 F.3d 844 (2d Cir. 1997).

Defendant argues that Plaintiff's ADA claim fails as a matter of law because she cannot establish that she is disabled within the meaning of the ADA, nor can she establish that she was fired (or forced to resign) because of her disability.  For the reasons that follow, Defendant's Motion is granted because Plaintiff cannot establish a *prima facie* case of disability discrimination.

**A.    Plaintiff is not disabled within the meaning of the ADA.**

Plaintiff asserts that she is disabled as a result of her depression and bi-polar disorder. (Defendant's SOMF, Ex. 7, p. 21). While there is no genuine dispute that Plaintiff may suffer from depression, the determination of whether or not a person suffers from a disability under the ADA "is an individualized inquiry" that does

not rest on the mere diagnosis of an impairment. <u>See</u> <u>Sutton v. United</u> <u>Airlines</u>, 527 U.S. 471, 483 (1999). Instead, courts are to look to "the effect of [an] impairment on the life of the individual." <u>See</u> 29 CFR pt. 1630, App. § 1630.2(j); <u>see also</u>, <u>Toyota Motor Mfg.,</u> <u>Kentucky, Inc. v. Williams</u>, 534 U.S. 184, 198 (2002) ("[i]t is insufficient for individuals attempting to prove disability status ... to merely submit evidence of a medical diagnosis of impairment.")

Disability determinations under the ADA are made on a case-by-case basis. <u>See</u> <u>Reeves</u>, 140 F.3d at 151-152. An individual is disabled within the meaning of the ADA if she suffers from "physical or mental impairment that substantially limits one or more of the major life activities . . ." <u>See</u> 42 U.S.C. §12102(2); 29 C.F.R. §1630.2(g)(1). A person also may be "disabled" if she has a record of such an impairment or is regarded as having such an impairment. <u>See</u> 42 U.S.C. § 12102(2)(A)-(C); 29 C.F.R. § 1630.2(g). Whichever definition one uses, however, the requirement that the impairment "substantially limit" a major life activity is applicable to all. In this case, although Plaintiff's Complaint alleges she was both disabled within the meaning of the ADA and perceived as disabled by her employer, she testified that she was not incorrectly perceived as being disabled by BOCES. (Defendant's SOMF, Ex. 7, pp. 19-21). Accordingly, the Court will focus only on whether Plaintiff is "disabled" within the meaning of the ADA.

Regulations promulgated under the Act define "major life activities" to include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." See 29 C.F.R. § 1630.2(I) (2004); see also Buckley v. Consolidated Edison Co. of New York, Inc., 155 F.3d 150 (2d Cir. 1998)(en banc). To be "substantially impaired" from performing a major life activity, a plaintiff must have an impairment that "prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." See Toyota, 534 U.S. at 197.

Accordingly, in this case, to establish the existence of a disability, Plaintiff must demonstrate that she suffers from a physical or mental impairment that "substantially limits one or more major life activities ...." See 42 U.S.C. § 12102(2)(A); see also Reeves, 140 F.3d at 152 ("The need to identify a major life activity that is affected by the plaintiff's impairment plays an important role in ensuring that only significant impairments will enjoy the protection of the ADA.") Therefore, the initial question for determination is whether Plaintiff's depression and bi-polar disorder constitutes a "disability" under the ADA.

### Major Life Activities

Although Plaintiff did not specifically articulate that her depression and bi-polar disorder substantially limited her in the major life activity of "working," her Complaint will be broadly

13

construed along with her deposition testimony to include that argument since she is *pro se*. See e.g., <u>Wernick v. Fed. Reserve Bank of New York</u>, 91 F.3d 379, 383 (2d Cir. 1996) (Where plaintiff failed to specifically allege which major life activities were affected by her impairment, the district court properly concluded that function at issue was ability to work.)

An individual is not substantially limited in the major life activity of working for purposes of the ADA unless she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs." See 29 C.F.R. § 1630.2(j)(3)(I).

Here, there is no evidence in the record that demonstrates that Bonilla's impairments substantially limited her ability to work. In fact, she testified that despite her condition, it never affected her ability to work. (See Defendant's SOMF, Ex. 7, p. 35 ("Sometimes [] I was not feeling like doing [my job], but I still did it because it was my duty.")).

Further, there is limited evidence that Plaintiff's mental health issues substantially limited her performance of other major life activities. Plaintiff testified that, at times, her depression and bi-polar disorder prevented her from sleeping, bathing, and cooking. (Defendant's SOMF, Ex. 7, pp. 34-35). However, with the exception of two medical absences (one which occurred following the January 6, 2005 altercation with co-workers), Plaintiff was able to attend work and perform her job. (See Defendant's SOMF, Ex. p. 35 ("[W]hen I was with the children on the bus I felt better.")).

The evidence shows that Plaintiff's depression and bi-polar disorder made performing her job functions difficult, but not impossible.   Indeed, the evidence demonstrates that despite her condition, Plaintiff performed her job in an above-average manner. (Defendant's SOMF, Ex. 3, ¶4).  As a result, Plaintiff has not shown how her condition substantially limited her major life activities, and without such evidence, Plaintiff cannot establish a *prima facie* case that she is "disabled" as defined in the ADA.

**B.     Plaintiff cannot demonstrate that she was fired because she was disabled.**

In establishing a *prima facie* discrimination claim, Plaintiff must also demonstrate that adverse employment action was taken against her under circumstances giving rise to an inference of discrimination.  See 42 U.S.C. § 12111(8).  Even assuming *arguendo* that Bonilla is disabled within the meaning of the ADA, Bonilla's disability discrimination claim fails because she cannot establish that she was forced to resign or was terminated because she is disabled.

Plaintiff cannot simply rely on the fact that she was fired as proof that the termination was motivated by discriminatory animus. See Lama, 1999 U.S. Dist. LEXIS 16966, *7-8.  She must point to facts that suggest the termination was motivated, at least in part, because of the alleged disability.   Id.   "Such facts might include: (1) actions or remarks made by decision makers that could be viewed as reflecting discriminatory animus; or (2) preferential treatment

given to employees outside the protected class; . . . " <u>Id.</u>, (citing

<u>Chertvoka v. Connecticut Gen. Life Ins. Co.</u>, 92 F.3d 81, 91-92

(2d Cir. 1996)).

Plaintiff has failed to establish an inference of discrimination. She testified that it is her belief that BOCES terminated her employment because of her disability (Defendant's SOMF, Ex. 7, pp. 67-8), but her subjective opinions or beliefs are insufficient to survive summary judgment. "Plaintiff cannot sustain an action based on [her] conclusory allegations of discrimination." <u>Valentine v. Standard & Poor's</u>, 50 F. Supp.2d 262, 283 (S.D.N.Y. 1999).

Moreover, there is no other evidence in the record giving rise to an inference that Plaintiff's employment was terminated because she suffered from depression and bi-polar disorder. There is no dispute that HR was unaware that Bonilla was disabled by her depression and bi-polar disorder at the time she asked Bonilla to resign. (Defendant's SOMF, Ex. 2, ¶18; Ex. 7, pp. 36-38). Further, even assuming Bonilla informed Gonzalez of her condition, a supervisor's mere awareness of an employee's condition does not necessarily impute sufficient knowledge of the disability to the employer. See <u>Moore v. Time Warner GRC 9</u>, 18 F.Supp.2d at 262. Accordingly, Plaintiff cannot establish a *prima facie* case of disability discrimination because she cannot demonstrate that she was fired because she is disabled.

**C.   Plaintiff cannot demonstrate the termination of her employment was pretextual.**

Even assuming *arguendo* that Plaintiff stated a prima facie case, summary judgment in favor of the Defendant is still appropriate in this case under the McDonnell Douglas framework because Defendant has set forth a legitimate, non-discriminatory reason for ending Plaintiff's employment with BOCES, and Plaintiff cannot demonstrate that this reason was merely a pretext for discrimination.

Defendant provided evidence that Bonilla was asked to resign because she violated BOCES' Code of Conduct by attempting to injure (i.e., by pushing) two of her co-workers. (Defendant's SOMF, Ex. 2, ¶17; Ex. 8, ¶(A)(1)). This satisfies Defendant's burden of stating a legitimate, non-discriminatory reason for terminating Plaintiff's employment. See Matya v. Dexter Corp., 2006 U.S. Dist. LEXIS 18358, *14 ("'any such stated purpose is sufficient to satisfy the defendant's burden of production; the employer does not have to persuade the court that the stated purpose was the actual reason its decision.'") (quoting Austin v. Ford Models, Inc., 149 F.3d 148, 153 (2d Cir. 1998) abrogated on other grounds by, Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)).

Bonilla, however, has failed to rebut Defendant's proffered explanation for terminating her employment, and has thus failed to establish that the proffered reason is a pretext for actual discrimination. See Matya at *15. To demonstrate pretext, a plaintiff must show both that the proffered reason is false and that

discrimination was the real reason. Id. At this step, the Court must "examin[e] the entire record to determine whether the plaintiff could satisfy [her] 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'" Schnabel v. Abramson, 232 F.3d 83, 90 (2d Cir. 2000) (quoting Reeves, 530 U.S. at 143). This requires the Court to determine whether "there is sufficient potential proof for a reasonable jury to find the proffered legitimate reason [is] merely a pretext for impermissible [discrimination]." Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 443 (2d Cir. 1999). Thus, unless Plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination, BOCES is entitled to summary judgment. See James v. NY Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000).

An unfortunate consequence of Plaintiff's failure to contest Defendant's motion and/or its Statement of Material Facts is that her ability to sustain her case is severely impaired. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249 ("There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.") Here, even when giving Plaintiff the benefit of every favorable inference, summary judgment is still warranted because there is no evidence in the record to support Plaintiff's contention that the real reason she was fired was because she was disabled.

As set forth above, there is no evidence that BOCES knew of her alleged disability, or that Defendant had any animus toward her based on her disability, other than her speculation that BOCES knew of her condition and did nothing to stop the harassment because the alleged offenders were related to the immediate supervisor. (Defendant's SOMF, Ex. 7, pp. 67-68). This is insufficient to survive summary judgment. See Mercado v. NYC Housing Authority, 1998 WL 151039, *14 (S.D.N.Y. 1998) (Record did not support any contention that [plaintiff's] supervisors harbored discriminatory animus toward him.)

Therefore, Plaintiff's ADA claims fail as a matter of law and summary judgment is granted in favor of BOCES. See 42 U.S.C. §12101(2)(A).

### III. Plaintiff's Retaliation Claim Must be Dismissed.

Retaliation discrimination claims are also analyzed under the McDonnell Douglas burden-shifting test. See McDonnell Douglas, 411 U.S. at 802. A prima facie case of retaliation requires the plaintiff to prove: (1) she participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging her; and (3) there exists a causal connection between the protected activity and the adverse action." Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007)(citing Feingold v. New York, 366 F.3d 138, 156 (2d Cir. 2004)). The United States Supreme Court has held that any action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination" could constitute

retaliation. <u>Burlington Northern & Santa Fe Ry. v. White</u>, 548 U.S. 53, 67-68 (2006).

Plaintiff claims that BOCES retaliated against her because she complained about the alleged harassment directed toward her by her co-workers (whom were Gonzalez's family members). (Defendant's SOMF, Ex. 7, pp. 43-44). While it is undisputed that Plaintiff's act of lodging complaints of harassment with Gonzalez is a protected activity, there is no evidence in the record that indicates Plaintiff was terminated or forced to resign because she made these complaints against her co-workers. Moreover, the record evidence demonstrates that Gonzalez attempted to redress Plaintiff's complaints and help her with the problem by assigning her to a permanent bus run. (Defendant's SOMF, Ex. 3, ¶10, 11). Plaintiff turned down this opportunity for an unknown reason. (Id.). Further, HR had scheduled a meeting between all of the involved employees to  discuss the problem among them, but the January 6, 2005 altercation took place before this meeting could take place, and Bonilla was asked to resign because she pushed two of her co-workers during the altercation. (Defendant's SOMF, Ex. 2, ¶¶ 7-9, 16, 17).

Accordingly, Plaintiff cannot demonstrate a causal connection between the protected activity and the adverse action. Thus, Plaintiff cannot establish a *prima facie* case of retaliation and her retaliation claim fails as a matter of law. I therefore grant Defendant's motion for summary judgment with respect to this claim.

## IV. Plaintiff's Hostile Work Environment Claim[4] Must be Dismissed.

Defendant also moves to dismiss Plaintiff's claim alleging a hostile work environment under the ADA on grounds that Plaintiff cannot establish a *prima facie* case. Regardless of the whether the ADA allows hostile work environment claims, a plaintiff suing for disability discrimination must establish a *prima facie* case of discrimination under the ADA. See Edwards v. Brookhaven Sci. Assocs., LLC, 390 F. Supp. 2d 225, 230 (E.D.N.Y. 2005) (citing Regional Econ. Cmty. Action Program, Inc. v. City of Middletown, 294 F.3d 35, 49 (2d Cir. 2002)). Because Plaintiff has not established that she is "disabled" within the meaning of the ADA, either by having a disability as the term is defined in the Act or by showing that she was incorrectly perceived as disabled by BOCES, the Court need not reach Plaintiff's argument that she was harassed and suffered a hostile work environment based upon her disability. See id.; accord, Rider v. GMC, 2006 U.S. Dist. LEXIS 34033, *23-24

---

[4] Although the Second Circuit has not determined whether the ADA gives rise to a cause of action for hostile work environment, (see Bonura v. Sears Roebuck & Co., 62 Fed. Appx. 399, 400 n.3 (2d Cir. 2003), cert. denied, 540 U.S. 1113 (2004)), district courts in this Circuit have held that such claims are cognizable. See e.g., Hendler v. Intelecom USA, Inc., 963 F. Supp. 200, 208 (E.D.N.Y. 1997) (analyzing ADA hostile work environment claim under the same standard as Title VII); Hudson v. Loretex Corp., 1997 WL 159282, *2-3 (N.D.N.Y. 1997) (same); Matya v. Dexter Corp., 2006 U.S. Dist. LEXIS 18358, * 41-42 (W.D.N.Y. 2006), aff'd, 2007 U.S. App. LEXIS 23968 (2d Cir 2007) (finding it was unnecessary to make a determination on this issue because plaintiff would not be able to establish a *prima facie* case of hostile work environment under the Title VII standard).

(W.D.N.Y. 2006) (failure of plaintiff to establish ADA disability precludes discrimination and harassment claims under the ADA).

Accordingly, Defendant's Motion for Summary Judgment is granted and Plaintiff's claim of discrimination based upon a hostile work environment is dismissed with prejudice.

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is granted, and Plaintiff's Complaint is dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca
Michael A. Telesca
United States District Judge

DATED:    Rochester, New York
          September 2, 2010